John A.V. Nicoletti, Esq.
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830
*Attorneys for Plaintiff*

RECEIVED
SEP 16 2009
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMERICAN COMMERCIAL LINES LLC,   Civil Action No.

                Plaintiff,

vs.

WATER QUALITY INSURANCE SYNDICATE,

                Defendant,
------------------------------------------------------------X

## COMPLAINT WITH DEMAND FOR A JURY TRIAL

The Plaintiff American Commercial Lines LLC (hereinafter sometimes referred to as "ACL" or "Plaintiff"), by its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against Defendant Water Quality Insurance Syndicate (hereinafter sometimes referred to as "WQIS" or "Defendant") alleges upon information and belief as follows:

### JURISDICTION

1. The following issues constitute questions of insurance coverage under an admiralty and maritime insurance policy and thereby come within the federal question and admiralty and maritime jurisdiction of the United States Courts pursuant to 28 U.S.C. § 1331 and 1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. There is also complete diversity of citizenship by and between the parties to this Action pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3. An actual controversy of a justiciable nature exists between Plaintiff ACL and the Defendant WQIS concerning their respective rights, obligations and/or legal relationships, as well as the interpretation of a certain marine insurance policy issued by WQIS and the aforesaid controversy can be determined by a judgment of this Court, without further suit.

4. Venue is proper because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this jurisdiction.

## PARTIES

5. At all material times, ACL was and is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business located in Jeffersonville, Indiana, and duly qualified to transact business in the State of Louisiana.

6. At all material times, WQIS was and is an insurance syndicate, with its principal place of business in New York. WQIS transacts business in the State of New York and has issued pollution liability insurance policies to insureds/domiciliaries of several states of the United States, including ACL.

7. Defendant WQIS is being sued in its capacity as the managing general agent of a particular syndicate of insurers, who has full authority to confirm coverage and make payments under the WQIS Policy at issue herein. The identity of the syndicate members are identified on the subscription page of the WQIS Policy, which is contained in Exhibit A.

## NATURE OF THE ACTION

8. By this Action, Plaintiff ACL seeks judgment against Defendant WQIS with respect to a certain policy of insurance no. 40-27083 (the "WQIS Policy") for cost of investigating and defending claims arising out of an oil spill, which occurred on July 23, 2008 in and on the Mississippi River in the area of New Orleans, Louisiana, which oil was spilled from the Barge DM-932.

9. A true and accurate copy of the WQIS Policy is attached hereto as Exhibit A.

10. ACL brings this action in its own right and as a representative of its excess liability insurers.

## FACTUAL BACKGROUND

11. At all material times, ACL was and is the owner of Barge DM-932, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 546058, measuring approximately 195 feet in length and 35 feet in breadth.

12. At all material times, Barge DM-932 was in all respects tight, staunch, strong, equipped and supplied, and in all respects seaworthy and fit for the service in which it was engaged.

13. At all material times, D.R.D. was acting as an independent contractor and had full dominion and control over the M/V MEL OLIVER, including but not limited to, the manning, crewing, operation, and maintenance of the M/V MEL OLIVER. D.R.D. was obligated to comply with all applicable laws and regulations with respect to the operation, use, manning, crewing and maintenance of the M/V MEL OLIVER.

14. On July 23, 2008, Barge DM-932 was under the exclusive care, custody and control of D.R.D. and was being pushed by the M/V MEL OLIVER, which was also under the exclusive care, custody and control of D.R.D.

15. Upon information and belief, at approximately 0130 hours local time on July 23, 2008, a collision occurred on the Mississippi River at or near Mile 98 AHP between the M/V TINTOMARA, a Liberian flag oceangoing vessel owned by Whitefin Shipping Co. Ltd., and Barge DM-932 while Barge DM-932 was being pushed by the M/V MEL OLIVER.

16. The foregoing collision was not due to any fault, neglect, or want of due care on the part of ACL, Barge DM-932 itself, nor anyone for whom ACL may be responsible.

17. As a result of the foregoing collision, Barge DM-932 was struck and damaged by the M/V TINTOMARA, sank, and was rendered a total loss. Subsequently, Barge DM-932 was removed from the Mississippi River by an independent contractor engaged by ACL, at ACL's expense.

18. Barge DM-932 was laden with a cargo of approximately 440,000 gallons of fuel oil. As a result of the collision, the cargo of fuel oil was rendered a total loss and approximately 300,000 gallons of fuel oil was spilled into the Mississippi River.

19. As a result of the collision, the Plaintiff ACL, although without fault, was required to take fiscal responsibility for the cleanup, which has resulted in an out-of-pocket cost to Plaintiff ACL and its insurers in an amount in excess of $70 million to-date, and with potential claims for additional cleanup costs and/or governmental and/or other third-party claims estimated in the sum of tens of millions of dollars.

20. The collision and resulting sinking of the Barge DM-932 and the oil spill were caused, in whole or in part, by the fault, negligence, inattention to duty, breach of duty, breach of

warranty both implied and express, breach of statutory duty, violation of rules and regulations, and other violations of law, which will be shown at the time of trial, on the part of D.R.D. and the crew of the M/V MEL OLIVER.

21. As a result of the collision, sinking of the Barge DM-932, and the oil spill, ACL has paid, and continues to pay for the cost of investigating and defending against claims arising out of the oil spilled from the Barge DM-932.

22. ACL has also been placed on notice and/or has been sued by various entities claiming damages as a result of the collision and oil spill, including the owners of the TINTOMARA, and by various entities alleging property damage and other damages resulting from the collision and oil spill, presently estimated to be in excess of $22.2 million.

23. WQIS issued and delivered a policy of primary pollution liability insurance to ACL in New York with the effective dates of July 30, 2007 through July 30, 2008.

24. The WQIS Policy specifically states as follows:

**Water Quality Insurance Syndicate
Policy Form 2007**

**PARTY I – INSURING PROVISIONS**

In consideration of the premium set forth on the Declarations Page of the **Policy**, and subject to the TERMS, CONDITIONS, LIMITATIONS, WARRANTIES, EXCLUSIONS and DEFINITIONS (as contained in PART V and shown in **bold type** face herein) of this **Policy**, the Subscribers to the WATER QUALITY INSURANCE SYNDICATE, as shown on the Signature Page hereof, hereafter "WQIS," do hereby agree to:

Indemnify the **Assured** for such amounts as the **Assured** shall have become liable to pay and shall have paid for pollution response or damages, solely in its capacity as **Owner** and/or **Operator** of the **Vessel(s),**

and

Reimburse the **Assured** for certain other costs and expenses, as described below, which the **Assured** shall have incurred in its capacity as **Owner** and/or **Operator** of the **Vessel(s)**,

By reason of or with respect to:

## COVERAGE A

### *The Discharge or Substantial Threat of a Discharge of Oil*

1) Liability to the United States or to any **Claimant** imposed under Section 1002 of the Oil Pollution Act of 1990 (Public Law 101-380, as amended), hereafter the "Act", and costs and expenses incurred by the **Assured** for **Removal** of **Oil** for which liability would have been imposed under Section 1002 of the Act, had the **Assured** not undertaken such **Removal** voluntarily;

2) Liability for interest imposed under Section 1005 of the Act;

3) Liability to any foreign **Claimant** under Section 1007 of the Act, except that indemnity under Section 1007(b)(4) is specifically <u>EXCLUDED</u>;

4) Liability for claims for contribution under Section 1009 of the Act;

5) Costs or expenses incurred by the **Assured** with the consent of WQIS for advertisement required under Section 1014 of the Act; and

6) Liability to a third party for loss, cost, damage, liability or expense which would have been recoverable by such a third party under COVERAGE A (1) through A (5) of PART I had the third party been an **Assured** under this **Policy**.

## COVERAGE B

### *The Discharge or Substantial Threat of a Discharge of Hazardous Substances*

1) Liability imposed under Section 107(a)(1)(A) through 107(a)(1)(C) of the Comprehensive Environmental Response, Compensation and Liability Act (Public Law 96-510, as amended), hereafter "CERCLA," and costs and expenses incurred by the **Assured** for **Removal, Response** or **Remedial Action** for which liability would have been imposed under Section 107(a)(1) of CERCLA had the **Assured** not undertaken such **Removal, Response** or **Remedial Action** voluntarily, however, liability imposed under any other Section or Subsection of CERCLA is specifically <u>EXCLUDED</u>;

2) Liability to a third party arising from the sudden, accidental and unintentional discharge, spillage, release, leakage or emission of a **Hazardous Substance** into or upon **Navigable Waters** or adjoining shorelines for any of the following damages:
   a. Injury to, or economic losses resulting from destruction of real property, personal property or natural resources;
   b. Loss of subsistence use of **Natural Resources** that have been injured, destroyed, or lost; and
3) Liability to any third party for loss, damage, cost, liability or expense which would have been recoverable by such third party under COVERAGE B (1) of PART I had the third party been an **Assured** under this **Policy**;

## COVERAGE C

### *Investigation and Defense*

Costs and expenses incurred by the **Assured** with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under COVERAGE A or B of PART I of the **Policy**.

\* \* \*

## PART II – LIMITS

### *ARTICLE A*

1) LIMIT APPLICABLE TO COVERAGE A and B of PART I: The limit of liability under this **Policy** with respect to all indemnity provided under COVERAGE A and B of PART I shall be the amount stated on the Vessel Schedule. This limit shall apply to each **Vessel** with respect to each separate **Occurrence**.

   Notwithstanding anything to the contrary in this **Policy**, it is specifically provided and agreed that WQIS at its sole option may withhold payment of any amounts claimed by the **Assured** under COVERAGES A or B of PART I until WQIS, at its absolute and sole discretion, is satisfied and believes that all of its known or potential liability under any evidence of insurance filed on behalf of the **Assured** pursuant to the financial responsibility requirements under the Act, CERCLA or otherwise and any applicable regulations thereunder have been satisfied. Provided further, however, that the amount withheld by WQIS may not exceed the amount of liability covered under such evidence of insurance issued in connection with any **Vessel(s)** involved in any **Occurrence** for which liability under this **Policy** is claimed, less any amounts actually paid by WQIS pursuant to such guarantee and application of a deductible, if any, hereunder.

2) LIMIT APPLICABLE TO COVERAGE C of PART I: The amounts payable for costs and expenses incurred by the **Assured** with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under COVERAGE A and B of PART I <u>shall be in addition to the limits of liability stated in ARTICLE A (1) of PART II</u>. (Emphasis added.)

* * *

### ARTICLE B

This **Policy** is deemed to have been issued to the **Assured** in New York, New York, and the law applicable to the interpretation of this **Policy** of insurance and the rights and obligations of WQIS and the **Assured** hereunder shall be federal maritime law or, in the absence of federal maritime law, the law of the State of New York, without regard for New York's choice of law rules.

Should there be any dispute arising out of or in any way concerning this **Policy** or the coverage provided by WQIS to the **Assured(s)** hereunder, which results in any lawsuit or other legal action against WQIS by the **Assured(s)**, such lawsuit or legal action shall be brought by the **Assured(s)** in the United States District Court for the Southern District of New York, and WQIS consents to the jurisdiction of that Court for all such lawsuits or legal actions. Notwithstanding the foregoing, any lawsuit or legal action brought by WQIS against any **Assured** with respect to disputes concerning or arising from this **Policy**, whether on account of premium owed or otherwise, may be brought by WQIS in any Court of competent jurisdiction in the United States.

25. The WQIS Policy specifically provides broad pollution coverage, including but not limited to, coverage for claims contemplated under the OPA, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), costs and expenses of salvage <u>and</u> wreck removal, <u>investigative and defense costs, etc.</u>

26. The WQIS Policy under Coverage A provides $5 million in coverage for, among other things, first-party and third-party liability arising out of the emission or discharge of oil and/or hazardous substances on or into navigable waterways, including liability imposed for cleanup or response costs under federal law and third-party liability for economic losses, cleanup or response costs, property damage.

8

27. The WQIS Policy provides for the payment of investigation and defense cost incurred by ACL in defending against claims arising out of the oil spill <u>in addition</u> to the indemnity limits provided under Coverages A and/or B.

28. The Barge DM-932 is a scheduled vessel on the WQIS Policy.

29. ACL provided timely notice of claim to WQIS.

30. Immediately after the oil spilled from the Barge DM-932, ACL provided WQIS with prompt notice, who in turn dispatched a WQIS representative to New Orleans to initially assist ACL with the management of the oil spill cleanup, the investigations into the cause of the spill and defense of potential governmental and/or other third party claims, which were likely to arise out of the oil spill.

31. Within less than a two (2) week period, WQIS withdrew its representative from New Orleans and no longer provided any assistance to ACL with the management of the oil spill cleanup, the investigation into the cause of the spill, and/or to assist in defending ACL from governmental and/or other third party claims.

32. Thereafter, ACL through its representatives continued to make attempts to obtain assistance from WQIS in the management of the spill, investigation into the cause of the spill, and defense of potential governmental and/or other third party claims arising out of the spill.

33. Despite repeated requests by ACL through its representatives to WQIS, WQIS refused to render any further assistance on the wrongful basis that WQIS' obligations to ACL ended when it exhausted its indemnity limit by paying some $5 million towards vendors involved with the cleanup of the oil spill, when in fact and at that time, WQIS had not exhausted its indemnity limits under the policy until at the earliest, August 28, 2008.

34. After WQIS paid its indemnity limit of liability under Coverage A of the policy on or about August 28, 2008, ACL through its representatives continued to make attempts to obtain assistance from WQIS in the management of the cleanup of the spill, the investigation of the cause of the spill and defense of potential governmental and/or other third party claims, but these requests were not only rebuffed by WQIS, but WQIS refused any direct contact with ACL or its representatives and directed all future contact be made with its attorney, John M. Woods, then of Thacher Proffitt & Woods.

35. ACL through its representatives advised WQIS that it would be inappropriate to make contact with WQIS through John M. Woods then of Thacher Proffitt & Woods, because of Mr. Woods' involvement with the WQIS Pollution Policy, which was issued to D.R.D., the tower of the Barge DM-932 at the time of the spill.

36. Despite request by ACL through its representatives to WQIS for reimbursement of defense costs, WQIS has refused to make those payments under the policy, claiming that its obligation to pay for investigation and defense costs was terminated upon its payment of the indemnity limit for the cleanup, itself.

37. ACL through its representatives has made repeated requests to WQIS to identify the language in the WQIS Policy, which terminates WQIS' obligation to pay for ACL's investigation and defense cost as incurred. To date, WQIS has failed to adequately identify the policy language, which grants WQIS the right to terminate its payment of defense cost.

38. In addition, ACL through its representatives requested from WQIS any legal precedent in New York, which supports WQIS' alleged position that WQIS' obligation to pay for defense cost is terminated upon its payment of the indemnity limit for the cleanup. To-date, WQIS has not provided ACL with any such legal support.

10

39. WQIS has wrongfully refused to honor its contractual obligations and declined to pay for the cost of investigating and defending ACL against the claims arising out of oil spilled from the Barge DM-932.

## AS AND FOR A FIRST CAUSE
## OF ACTION FOR BREACH OF CONTRACT

40. Repeats and realleges the allegations set forth in paragraphs "1" through "39," as if more fully set forth at length herein.

41. In and by the terms of the WQIS Policy, WQIS is obligated to pay ACL's defense cost as incurred in addition to any payments made under Coverages A and/or B.

42. WQIS did not exhaust its indemnity limit under Coverage A until, at the earliest, August 28, 2008.

43. Between July 23, 2008 and August 28, 2008, ACL incurred and has paid substantial investigation and defense cost in an amount in excess of $300,000.00 as near as can be calculated at this time, which although duly demanded has gone unpaid by WQIS.

44. WQIS has declined coverage under the WQIS Policy to pay ACL for ACL's cost of investigating and defending governmental and/or other third party claims between July 23, 2008 and August 28, 2008.

45. By virtue of the foregoing premises, WQIS has breached its contract with ACL and is therefore liable to ACL for the cost incurred in investigating and defending governmental and/or other third party claims between July 23, 2008 and August 28, 2008.

## AS AND FOR A SECOND CAUSE
## OF ACTION FOR BREACH OF CONTRACT

46. Repeats and incorporates by reference paragraphs "1" through "39" of this Complaint as if more fully set forth herein.

47. In and by the terms of the WQIS Policy, WQIS is obligated to pay for all defense cost incurred in the past and in the future by ACL in investigating and defending against governmental and/or other third party claims arising out of the oil spill.

48. WQIS has declined coverage under the WQIS Policy to pay ACL for ACL's cost of investigating and defending governmental and/or other third party claims.

49. By virtue of the foregoing premises, WQIS has breached its contract with ACL and is therefore liable to ACL for all costs, which have been incurred and will be incurred in investigating and defending against governmental and/or other third party claims arising out of the oil spill, which at best can be determined to date is in a sum in excess of $2 million with a equal or greater amount to be incurred in the future.

## DEMAND FOR A JURY TRIAL

50. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff American Commercial Lines LLC prays that:

A. Judgment on the First Cause of Action in favor of Plaintiff American Commercial Lines LLC against Defendant Water Quality Insurance Syndicate for the total amount of fees and disbursements paid in investigating and defending governmental and/or other third party claims between July 23, 2008 and August 28, 2008;

B. Judgment on the Second Cause of Action in favor of Plaintiff American Commercial Lines LLC against Defendant Water Quality Insurance Syndicate for all fees and disbursements incurred by ACL in investigating and defending governmental and/or other third party claims arising out of the oil spill from July 23, 2008 through the present and into the future; and

C.　　For whatever other and further relief this Court deems just and proper;

together with the cost and disbursements of this action.

This 16th day of September 2009.

                                                Respectfully submitted,
                                                NICOLETTI HORNIG & SWEENEY
                                                *Attorneys for Plaintiff*
                                                *American Commercial Lines LLC*

                                                By: _/s/ John A.V. Nicoletti_
                                                John A.V. Nicoletti (7174)
                                                Wall Street Plaza
                                                88 Pine Street, 7th Floor
                                                New York, New York 10005-1801
                                                Tel:  (212) 220-3830
                                                Fax:  (212) 220-3780
                                                Email: jnicoletti@nicolettihornig.com
                                                File No.: 28000007