UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:
AMERICAN COMMERCIAL LINES, LLC,    : 09 Civ. 7957 (LAK) (JCF)
NATIONAL LIABILITY & FIRE          :
INSURANCE COMPANY, INDEMNITY       :        REPORT AND
INSURANCE COMPANY OF NORTH AMERICA,:     RECOMMENDATION
LIBERTY MUTUAL INSURANCE COMPANY,  :
FEDERAL INSURANCE COMPANY, and     :
THE NORTHERN ASSURANCE COMPANY OF  :
AMERICA,                           :
                                   :
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
WATER QUALITY INSURANCE SYNDICATE, :
                                   :
              Defendant.           :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

     The plaintiffs -- American Commercial Lines ("ACL") and a

number of its excess insurers -- seek partial summary judgment on

six of the affirmative defenses interposed by defendant Water

Quality Insurance Syndicate ("WQIS"), ACL's primary pollution

insurer.  WQIS opposes the plaintiffs' motion on three of these

defenses[1] and cross-moves for partial summary judgment, arguing

---

[1] WQIS has not opposed summary judgment on the following
defenses: (1) the First Affirmative Defense, which argues that the
plaintiffs have failed to state a claim; (2) the Second Affirmative
Defense, which argues that the plaintiffs failed to adequately
plead a demand for a declaratory judgment; and (3) the Third
Affirmative Defense, which argues WQIS is entitled to contribution.
(Answer of Water Quality Insurance Syndicate to Plaintiffs' Amended
Complaint ("Answer"), attached as Exh. 2 to Declaration of Richard
W. Stone II dated Sept. 26, 2013 ("1st Stone Decl."), at 9;
Plaintiffs' (1) Reply Memorandum of Law in Support of Plaintiffs'
Motion for Partial Summary Judgment and (2) Answering Memorandum of
Law in Opposition to Defendant's Cross-Motion for Partial Summary
Judgment ("Pl. Reply") at 1; Defendant's Memorandum of Law in
Opposition to Plaintiffs' Motion for Partial Summary Judgment and
in Support of Defendant's Cross-Motion for Partial Summary Judgment
("Def. Memo.") at 1).  Summary judgment should therefore be granted
to the plaintiffs on those defenses.

that some coverage is barred because ACL did not receive WQIS'
prior consent for certain defense costs. For the reasons that
follow, I recommend granting in part and denying in part the
plaintiffs' motion, and granting the defendant's motion.

Background[2]

The incident out of which this insurance dispute arises
occurred on July 23, 2008, when a barge owned by ACL was involved
in a collision in the Mississippi River, spilling 300,000 gallons
of fuel oil into the water. (Plaintiffs' S.D.N.Y. Civil Rule
56.1(b) Response to Defendant's S.D.N.Y. Civil Rule 56.1(a)
Statement of Facts ("Pl. R. 56.1 Response") at 3, ¶¶ 6-9). WQIS
was the carrier of ACL's primary pollution policy at the time of
the incident. (Pl. R. 56.1 Response at 2, ¶¶ 1-2; Water Quality
Insurance Syndicate Policy No. 40-27083 ("WQIS Policy"), attached
as Exh. 3 to 1st Stone Decl., at 1).[3]

Coverage A of the WQIS Policy (WQIS Policy at 4) covers ACL
for various liabilities imposed under the Oil Pollution Act of 1990
connected with the discharge or substantial threat of discharge of
oil into navigable waters and certain other areas. American

---

The remaining defenses at issue in this motion are the Fourth
Affirmative Defense, contending that the damages alleged in the
complaint were insured by parties other than WQIS, the Sixth
Affirmative Defense, contending that coverage is barred because ACL
failed to obtain prior consent for defense and investigation
expenses, and the Seventh Affirmative Defense, contending that ACL
has no financial interest in the action.

[2] Each of the following facts is undisputed.

[3] The WQIS Policy does not include page numbers. I therefore
use the pagination assigned by the court's Case
Management/Electronic Case Filing System.

Commercial Lines LLC v. Water Quality Insurance Syndicate, No. 09 Civ. 7957, 2010 WL 1379763, at *1 (S.D.N.Y. March 29, 2010); see also 33 U.S.C. § 2702 et seq. Coverage C requires WQIS to reimburse ACL for "[c]osts and expenses incurred by [ACL] with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under [Coverage A] . . . ." (WQIS Policy at 5). The $5,000,000 limit of indemnity under Coverage A was exhausted on August 27, 2008. (Pl. R. 56.1 Response at 3, ¶ 13). In addition, WQIS reimbursed ACL over $500,000 for certain defense and investigation costs incurred during the period between the incident and August 27, 2008. (Pl. R. 56.1 Response at 4, ¶ 14). Additional defense and investigation costs were incurred but not reimbursed, both before and after August 27, 2008.

In September 2009, ACL filed this action to recover defense and investigation costs under Coverage C, both for the period before August 27, 2008 ("Phase I") and the period after that date ("Phase II"). (Complaint, ¶¶ 41-49). ACL later filed an amended complaint that added its excess insurers as plaintiffs and pled an additional cause of action seeking subrogation of defense and investigation costs reimbursed by the excess insurers. (Amended Complaint ("Am. Compl.") at 1 & ¶¶ 53-61). The parties filed cross-motions for partial judgment on the pleadings addressing the question of whether "WQIS' obligation to reimburse ACL's investigation and defense costs ended when its payments under two other coverage clauses reached the policy limits for those coverages." American Commercial Lines, 2010 WL 1379763, at *1.

The Honorable Lewis A. Kaplan, U.S.D.J., granted the plaintiffs'
motion, holding that

> WQIS's contractual obligation . . . to reimburse ACL for
> costs incurred and to be incurred by ACL in the
> investigation and defense of all claims asserted against
> ACL as a result of the subject oil spill continues until
> all such costs are reimbursed, regardless of whether
> other indemnity limits . . . have been reached.

Id. at *3.

The parties have now filed cross-motions for partial summary
judgment. The plaintiffs seek summary judgment on the following
defenses interposed by WQIS: (1) the "prior consent" defense as to
costs incurred in contracting with the Center for Toxicology and
Environmental Health ("CTEH") to monitor air quality and water
intake for the Phase I period[4] (Memorandum of Law in Support of
Plaintiffs' Motion for Partial Summary Judgment ("Pl. Memo.") at 5;
Def. Memo. at 9-12); (2) the "prior consent" defense as to all
defense and investigation costs incurred for the Phase II period[5]
(Pl. Memo. at 7); (3) the defense that the "damages alleged in the
Amended Complaint were insured by parties other than WQIS, and
therefore, WQIS is not liable" for them (Pl. Memo. at 8); and (4)

---

[4] WQIS does not oppose the plaintiffs' motion for summary
judgment on the prior consent defense in Phase I as to Maritime
Alliance Group, Inc. ("MAGI") and Cardno Entrix ("Entrix"). (Def.
Memo. at 9 n.6; Pl. Reply at 1). Therefore, the plaintiffs' motion
on this defense as to charges incurred from these entities in Phase
I should be granted.

[5] WQIS does not oppose the plaintiffs' motion for summary
judgment on the prior consent defense on Phase II as to MAGI,
Entrix, Worley Catastrophe Response LLC, and Jones Walker. (Def.
Memo. at 9 n.6; Pl. Reply at 1-2). Therefore, the plaintiffs'
motion on this defense as to charges incurred from these entities
in Phase II should be granted.

the defense that ACL has not suffered recoverable damages because the defense costs it seeks were paid by other insurers (Pl. Memo. at 10-11). For its part, WQIS argues that coverage is barred because ACL did not seek prior consent for defense costs incurred from the employment of the following persons and entities: CTEH; law firm Nicoletti Hornig & Sweeney (the "Nicoletti Firm"); Marine Chemists of Louisiana ("Marine Chemists"); marine consultants Martin, Ottaway, van Hemmen & Dolan ("Martin Ottaway") and Budwine & Associates ("Budwine"); testing firm Intertek; accounting firms Kriegstein Kim & Wright and Kim & Wright (together, "Kim & Wright"); forensic accountants Magnan Graizarro & Associates ("Magnan"); law firms Hogan Lovells (formerly Hogan & Hartson), Fox Rothschild LLP ("Fox Rothschild") and Holbrook & Murphy; consultants George Randall, Bergin Maritime Consulting ("Bergin"), GAEA Consultants LLC ("GAEA"), BMT ARGOSS ("BMT"), and William J. George, Ph.D.; and imaging and archiving firm Docusource. (Def. Memo. at 3, 21-27).

Discussion

    A.   Legal Standard

       Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 137 (2d Cir. 2009). A material fact is one that "'might affect the outcome of the suit under the governing law.'" <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 35 (2d Cir. 2008) (quoting <u>Anderson</u>, 477 U.S. at 248). In assessing whether there is a genuine issue of material fact, "a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" <u>Seeman v. Local 32B-32J, Service Employees Union</u>, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," <u>Wrobel v. County of Erie</u>, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)). The parties may support their claims with discovery materials, stipulations, and affidavits, <u>see</u> Fed. R. Civ. P. 56(c)(1)(A); however, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted).

B. Prior Consent Defense

Under New York law, which the parties agree applies here, see American Commercial Lines, 2010 WL 1379763, at *2 n.19, a dispute regarding the proper interpretation of an unambiguous contract may be resolved by summary judgment. Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002). Whether an insurance policy is ambiguous is a "threshold question of law to be determined by the court." Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co., 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks omitted). In determining the meaning of an agreement, the court must "read [the policy] in light of common speech and the reasonable expectations of a businessperson." Id. (internal quotation marks omitted). In addition, the policy must be "read as a whole to determine its purpose and intent and [] should be interpreted in a way [that] reconciles all its provisions, if possible." James V. Aquavella, M.D., P.C. v. Viola, 79 A.D.3d 1590, 1595, 914 N.Y.S.2d 498, 503 (4th Dep't 2010) (alteration in original) (internal quotation marks omitted). If a contract is ambiguous, the court may determine its meaning by looking to extrinsic evidence and canons of interpretation, including the canon that any ambiguity in an insurance contract must be interpreted in favor of the insured. Parks Real Estate Purchasing Group, 472 F.3d at 43.

As noted above, Coverage C requires WQIS to pay for "[c]osts and expenses incurred by [ACL] with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under

[Coverage A] . . . ." (WQIS Policy at 5). The parties have not sought summary judgment on the question of whether the expenses ACL incurred are properly considered investigation or defense costs (Pl. Memo. at 5 n.15; Def. Memo. at 2 n.1, 9 n.6); rather, the issue here is whether the prior consent requirement was either satisfied or waived.

1.  Prior Consent in Phase I

The plaintiffs contend that ACL had WQIS' implied consent to hire CTEH to monitor air quality and water intake.[6] (Pl. Memo. at 5). According to Douglas Ruschman, ACL's vice-president of legal affairs, in hiring CTEH, he had

> followed to the T what WQIS had told us at every spill response that I'd ever gone to[,] [which was] that [] the first thing you need to do is establish air and water monitoring to be sure that . . . somebody can't come back and continue to expand the areas that are involved, and . . . they can't claim that something was worse than what it was, et cetera.[7]

(Excerpts from Deposition of Douglas Charles Ruschman dated Aug. 7, 2013 ("Ruschman Dep."), attached as Exh. 9 to 1st Stone Decl., at 11, 134-35). This statement is the primary evidence the plaintiffs marshal in support of their argument.

---

[6] In their reply, the plaintiffs expand their Phase I implied consent argument to include Marine Chemists, which, apparently, also performed air and water quality monitoring prior to August 27, 2008. (Pl. Reply at 17). A court will ordinarily not address an argument raised for the first time in a reply brief, and I will not do so here. See, e.g., Urquhart v. Metropolitan Transportation Authority, __ F. Supp. 2d __, __, 2013 WL 5462280, at *6 n.5 (S.D.N.Y. 2013). In any case, the same analysis regarding implied consent in connection with CTEH applies to Marine Chemists.

[7] Contrary to WQIS' contention, this statement is not inadmissible hearsay. (Def. Memo. at 10). Rather, it is an admission of a party-opponent. Fed. R. Evid. 801(d)(2).

These purported statements of WQIS' representative(s) cannot constitute consent under the policy. To be sure, "consent" is not defined in the policy. However, examining the language of Coverage C in tandem with that of Coverage M and Exclusion B of the policy demonstrates that, in order to be entitled to reimbursement for defense and investigation costs, it was incumbent upon ACL to request and receive consent from WQIS specifically in relation to the incident. See Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir. 1996) ("[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity.").

Coverage M waives the prior consent requirement when the insured "acts to mitigate a spill or discharge or threat of a discharge, in an emergency situation, . . . subject [] to immediate notice to WQIS as soon as the [insured] becomes aware of the [o]currence." (WQIS Policy at 7). Exclusion B further limits the waiver. It reads, in relevant part:

> Notwithstanding any provisions to the contrary, this Policy does not provide indemnity for any cost or expense incurred by the [insured] without the prior consent of WQIS, including investigation and defense costs. However, in the event that the [insured] acts to mitigate a discharge or Release or threat of a discharge or Release under [Coverage] M . . . , this exclusion shall not apply to costs or expenses incurred prior to notification being provided to WQIS by the [insured] for:
>
> (1) Removal of Oil arising from the sudden, accidental and unintentional spillage, leakage or emission for which liability would have been imposed under Section 1002 of the [Oil Pollution] Act [of 1990] had the [insured] not undertaken such Removal voluntarily[.]

(WQIS Policy at 9). These provisions carve out an exception to the

prior consent requirement for oil removal costs that are incurred in an emergency prior to notice to WQIS of an oil spill. The obvious reason for this waiver is that, in an emergency, the "prior consent" contemplated by the policy will be impracticable and inefficient. Thus, obtaining prior consent mandates a process of receiving such consent set in motion by a covered incident, which then triggers a request for consent, presumably a review of the request, and an ultimate decision. Notably, the dispensation of Exclusion B is of limited duration, covering only charges incurred between the occurrence of an incident and the time at which notice of the incident is given to WQIS -- that is, the period during which it would be impracticable to engage in the consent process. By clear implication, then, prior consent is express consent, and nothing in the contract indicates that implied consent would satisfy the policy requirements.[8]

Indeed, allowing implied consent would undermine one of the purposes of the prior consent requirement -- certainty and efficiency for the parties to the insurance contract in determining the charges for which WQIS must indemnify its insured. Implied consent must be "inferred from surrounding circumstances," Griggs-

---

[8] No party cites Coverage M or Exclusion B in support of its position, perhaps because the prior consent requirement is never waived for defense and investigation costs. Exclusion B limits the waiver included in Coverage M to charges incurred for removal of oil under Coverage A; removal of hazardous substances for which liability would be imposed pursuant to the Comprehensive Environmental Response, Compensation and Liability Act under Coverage B; and actions taken to mitigate liabilities under Coverage E, which governs coverage for discharge of substances not otherwise mentioned in the policy. (WQIS Policy at 4-5, 9-10).

10

Ryan v. Smith, 904 F.2d 112, 116-17 (1st Cir. 1990) (internal

quotation marks omitted), and thus injects a significant amount of

uncertainty into the process of determining whether consent has

been given.[9]  Because of this, a businessperson interpreting the

policy would reasonably expect that the "prior consent" provision

excludes implied consent.  See Parks Real Estate Purchasing Group,

472 F.3d at 42 (contract to be interpreted in light of "reasonable

expectations of a businessperson").  ACL did not obtain express

consent from WQIS to incur costs in connection with its retention

of CTEH.[10]

The plaintiffs argue in their reply brief that "[a]ny failure

---

[9] Because the existence of implied consent is a question of
fact, see, e.g., Marte v. Berkman, 16 N.Y.3d 874, 875, 925 N.Y.S.2d
388, 389 (2011) (question of implied consent to mistrial is factual
determination); Burton v. ITT Continental Baking Co., 93 A.D.2d
921, 922, 462 N.Y.S.2d 335, 336 (3d Dep't 1983) ("[T]he question of
whether the consent of a compensation carrier to a settlement of a
third-party action may be implied from its acts and conduct is
necessarily a factual one . . . ."), the plaintiffs' motion for
summary judgment on this issue would be denied even if the policy
could be satisfied by implied consent.  The statement that
assertedly indicates implied consent here is, at best, ambiguous,
appearing much more likely to be a mere statement of best-practices
rather than one evincing consent.  Even if undisputed, it would not
show that the plaintiffs are entitled to judgment as a matter of
law on the issue.

[10] The parties argue over whether the prior consent provision
is an express condition precedent to coverage, therefore requiring
strict compliance.  (Def. Memo. at 7, 10; Pl. Reply at 3-8).  This
is irrelevant for two reasons.  First, the provision is a term of
the insurance agreement, and "may not [be] disregard[ed]," whether
or not it is an express condition precedent.  Caporino v. Travelers
Insurance Co., 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 521 (1984).
Second, there is no evidence that ACL complied with the provision,
whether strictly, as is required for an express condition, or
otherwise.  See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,
86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737 (1995) (noting strict
compliance required for express conditions).

. . . on [ACL's] part . . . to satisfy the promise or constructive condition of 'prior consent' was both trivial and unintentional, and does not justify . . . the . . . remedy of forfeiture of coverage." (Pl. Reply at 5). This argument, too, fails. "[A] court may excuse the non-occurrence of a condition precedent to avoid causing disproportionate forfeiture to the party that would otherwise lose a part of what it expected to receive." Mount Sinai Hospital v. 1998 Alexander Karten Annuity Trust, 110 A.D.3d 288, 299, 970 N.Y.S.2d 533, 541 (1st Dep't 2013) (internal quotation marks omitted). However, when satisfaction of the condition in question is within the control of the party obliged to perform it, this doctrine of leniency does not apply. See id. at 299-300, 970 N.Y.S.2d at 542 (citing Restatement (Second) of Contracts § 227[1] and National Fuel Gas Distribution Corp. v. Hartford Fire Insurance Co., 28 A.D.3d 1169, 1170, 814 N.Y.S.2d 436, 437 (4th Dep't 2006)). Here, it was ACL's obligation to seek prior consent, and it was ACL that failed to do so.[11]

Finally, in opposition to WQIS' cross-motion for summary judgment, the plaintiffs contend that WQIS is estopped from raising failure to obtain prior consent as a defense to the Phase I charges of CTEH, Marine Chemists, and the Nicoletti Firm because the insurer did not disclaim coverage that ground. (Pl. Reply at 23-24). "New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage

---

[11] This reasoning applies equally to ACL's failure to obtain prior consent for Phase II charges.

12

where other defenses are asserted, and where the insurer possesses sufficient knowledge . . . of the circumstances regarding the unasserted defense." Estee Lauder Inc. v. OneBeacon Insurance Group, LLC, 62 A.D.3d 33, 35, 873 N.Y.S.2d 592, 594 (1st Dep't 2009) (internal quotation marks omitted). However, "an insurer may reserve the right to disclaim on such different or alternative grounds as it may later find to be applicable." Id., 873 N.Y.S.2d at 594.

The plaintiffs point to an e-mail from Harry Diamond, WQIS' Vice-President of Claims, dated November 11, 2009, in which he questioned certain invoices submitted for Phase I claims (including an invoice from the Nicoletti Firm), asking the basis on which ACL hired the law firm and noting that WQIS was responsible for reimbursing only defense costs incurred to defend claims covered under the WQIS policy. (E-mail of Harry Diamond dated Nov. 11, 2009 ("Diamond 11/11/09 E-mail"), attached as part of Exh. A to Declaration of Brad G. Hendrick dated Nov. 7, 2013, attached as Exh. 2 to Second Declaration of Richard W. Stone II dated Nov. 15, 2013 ("2nd Stone Decl."), at 3). There are numerous reasons that this evidence does not support the plaintiffs' position on waiver. First, Mr. Diamond does not disclaim coverage on any ground in the e-mail, and cannot, therefore, be said to have waived the prior consent defense in favor of other defenses. Estee Lauder, 62 A.D.3d at 35, 873 N.Y.S.2d at 594. Second, the e-mail explicitly reserves all of WQIS' "rights and defenses whether arising at law, under the policy or otherwise." (Diamond 11/11/09 E-mail at 3).

13

This reservation of rights would have defeated the plaintiffs' waiver argument even if there had been a disclaimer of coverage on other grounds.  See National Restaurants Management, Inc. v. Executive Risk Indemnity, Inc., 304 A.D.2d 387, 388, 758 N.Y.S.2d 624, 625 (1st Dep't 2003) (holding that reservation of rights does not entitle plaintiff to coverage, even when insurer initially disclaimed on different ground than ultimately invoked).  Finally, the e-mail at issue post-dates WQIS' assertion of the prior consent defense, which was interposed on October 6, 2009 in its answer to the ACL's original complaint.  (Answer of Water Quality Insurance Syndicate ("Original Answer") at 7).  The plaintiffs are therefore simply incorrect when they contend that WQIS did not disclaim coverage on the ground of prior consent.

For these reasons, I recommend that the plaintiffs' motion for summary judgment as to WQIS' prior consent defense in connection with charges incurred in Phase I from CTEH be denied, and defendant's motion be granted as to its prior consent defense as to those Phase I charges for which prior consent was not received -- that is, Phase I charges from CTEH, Marine Chemists, and the Nicoletti Firm.

### 2.    Prior Consent in Phase II

#### a.    Waiver of Prior Consent Requirement

The plaintiffs argue that ACL was excused from complying with the prior consent requirement for charges incurred after August 27, 2008, because WQIS would have denied any claims for such reimbursement.  (Pl. Memo. at 6; Pl. Reply at 24-26).  It points

out that WQIS has taken the position that it is not obligated to reimburse ACL for those defense and investigation costs, and that WQIS was no longer involved in handling claims for defense and investigation costs after August 27, 2008. (Pl. Reply at 24-25; Pl. R. 56.1 Statement, ¶ 16; Water Quality Insurance Syndicate's Response to Plaintiffs' Local Civil Rule 56.1(a) Statement and Local Civil Rule 56.1(a) Statement in Support of Cross-Motion for Partial Summary Judgment ("Def. R. 56.1 Statement") at 3, ¶ 16; Affidavit of Harry J. Diamond dated Oct. 24, 2013 ("Diamond Aff."), attached as Exh. 1 to Declaration of Corey R. Greenwald dated Oct. 25, 2013 ("Greenwald Decl."), ¶ 8). According to the plaintiffs, WQIS has repudiated the policy, thus relieving ACL of the obligation to comply with the prior consent provision.

Under New York law, when an insurer repudiates an insurance policy, the insured need not comply with the requirements of the policy. See <u>State Farm Insurance Co. v. Domotor</u>, 266 A.D.2d 219, 220, 697 N.Y.S.2d 348, 249 (2d Dep't 1999); <u>Bear Wagner Specialists, LLC v. National Union Fire Insurance Co. of Pittsburgh, PA</u>, 24 Misc. 3d 1218(A), 2009 WL 2045601, at *7 (Sup. Ct. N.Y. Cnty. July 7, 2009); <u>see also</u> <u>National Railroad Passenger Corp. v. Steadfast Insurance Co.</u>, No. 06 Civ. 6072, 2009 WL 562610, at *13 (S.D.N.Y. March 5, 2009). However, "a difference exists between true contractual repudiations -- usually called anticipatory breaches -- and run-of-the-mill breaches of contract such as those alleged by insureds upon receiving coverage disclaimers." <u>Seward Park Housing Corp. v. Greater New York Mutual</u>

Insurance Co., 43 A.D.3d 23, 31, 836 N.Y.S.2d 99, 104-05 (1st Dep't 2007) (correcting "the erroneous, interchangeable use of the terms" repudiation and disclaimer).  An insurer repudiates a policy "only where a plaintiff establishes that the insurer has committed an anticipatory breach by disclaim[ing] the intention or the duty to shape its conduct in accordance with the provisions of the contract." Id. at 32, 836 N.Y.S.2d at 105 (alteration in original) (internal quotation marks omitted).  "To establish repudiation, [a plaintiff must] show that [the insurer] distinctly, unequivocally, and absolutely refused to perform its obligations under the policy," Varda, Inc. v. Insurance Co. of North America, 45 F.3d 634, 638 (2d Cir. 1995), by "attempt[ing] to avoid its obligations by advancing an untenable interpretation of the contract, or . . . communicat[ing] its intent to perform only upon the satisfaction of extracontractual conditions," Fonda v. First Pioneer Farm Credit, ACA, 86 A.D.3d 693, 694-95, 927 N.Y.S.2d 417, 419 (3d Dep't 2011) (second alteration in original) (internal quotation marks omitted).  However, if the insurer "'explain[s] the denial of coverage with reference to policy provisions and exclusions,' this is a 'disclaimer' of coverage, not a 'repudiation' of the contract of insurance." National Railroad, 2009 WL 562610, at *13 (alterations in original) (quoting Seward Park, 43 A.D. 3d at 32, 836 N.Y.S.2d at 105).

The plaintiffs' argument fails for two reasons.  First, "whether repudiation occurred must be judged on the basis of [the allegedly breaching party's] words and acts as communicated to [the

16

other party] at the time." <u>Briarwood Farms, Inc. v. Toll Brothers, Inc.</u>, 452 F. App'x 59, 62 (2d Cir. 2011) (citing <u>Forward Publications, Inc. v. International Pictures, Inc.</u>, 277 A.D.2d 846, 846, 98 N.Y.S.2d 139, 140 (1st Dep't 1950)). WQIS did not communicate anything to ACL regarding indemnification for defense and investigation costs in Phase II until August 7, 2009. (Declaration of John A.V. Nicoletti dated Nov. 14, 2013 ("Nicoletti Decl."), attached as Exh. 3 to 2nd Stone Decl., ¶ 5; Pl. Reply at 20). This first communication -- an e-mail from counsel for the insurer in response to an inquiry about whether ACL's excess insurers "can recover any of the ACL defense costs they have paid from WQIS" -- asserts merely that counsel "[doesn't] think so." (E-mail of John Woods dated Aug. 7, 2009 ("Woods E-mail"), attached as Exh. A to Nicoletti Decl.). That is not a "distinct[], unequivocal[], and absolute[] refus[al]." <u>Varda</u>, 45 F.3d at 638. Indeed, the first clear assertion that WQIS was not obligated to pay charges incurred post-August 27, 2008, came on October 6, 2009, in the answer to ACL's original complaint. (Declaration of Dawn R. Landry dated Nov. 13, 2013, attached as Exh. 1 to 2nd Stone Decl., ¶ 15; Original Answer, ¶ 36). Charges incurred before that date, then, cannot have been subject to any waiver of the prior consent requirement due to an alleged repudiation. <u>See, e.g.</u>, <u>TLC Beatrice International Holdings, Inc. v. Cigna Insurance Co.</u>, No. 97 Civ. 8589, 2000 WL 282967, at *5 (S.D.N.Y. March 16, 2000) (noting that allegedly repudiating letter that post-dated plaintiff's entry into settlement agreement "could not have released the [plaintiff] from

its already-violated obligation to seek [the insurer's] consent before agreeing to settle").

Second, and more importantly, the plaintiffs have not shown that WQIS' refusal to pay claims incurred after August 27, 2008, was a repudiation of the policy rather than a disclaimer of coverage. The August 7, 2009 e-mail asserts that WQIS believed that its "defense costs obligation ceased once WQIS exhausted its $5 million primary layer." (Woods E-mail). That is precisely the basis on which WQIS argued it was not responsible for the costs. (Original Answer, ¶ 36); American Commercial Lines, 2010 WL 1379763, at *2 ("WQIS' payments under Coverage A have reached the policy limit for that coverage set out in the Vessel Schedule. The parties disagree as to whether WQIS nevertheless remains obligated to reimburse ACL under Coverage C . . . ." (footnote omitted)). That is, WQIS "explained the denial of coverage with reference to policy provisions and exclusions" -- specifically the policy limits included in the Vessel Schedule (WQIS Policy at 2) -- making the refusal a disclaimer of coverage rather than a repudiation.[12] Seward Park, 43 A.D.3d at 32, 836 N.Y.S.2d at 105); see also PB

---

[12] At first blush, it may seem somewhat peculiar to require an insured to seek the consent of its insurer to incur costs when that insurer has asserted that the policy no longer covers such expenses. However, where there is a dispute about the extent of coverage, it would be reasonable for the insurer to evaluate the request and perhaps provide conditional or provisional consent, in light of the possibility that its interpretation of its obligations may be mistaken (as WQIS' was here) and its obligation not to unreasonably withhold such consent. See, e.g., Schefler v. Livestock & Casualty Insurance Co., 44 A.D.2d 811, 811, 355 N.Y.S.2d 608, 609 (1st Dep't 1974) (recognizing an implied requirement that insurer not unreasonably withhold consent).

Americas Inc. v. Continental Casualty Co., 690 F. Supp. 2d 242, 250-51 (S.D.N.Y. 2010) (indicating that whether insured was obligated to comply with provision requiring insurer's consent to settle claim depended on whether insurer had repudiated insurance contract or merely disclaimed coverage); Bear Wagner Specialists, 2009 WL 2045601, at *8-9 (holding insured to prior consent provision where coverage was not repudiated but disclaimed).

In re Marine, which held that "once WQIS denied coverage and the right to secure counsel arose in favor of [the insured], the 'prior consent' language of the policy became inoperable," In re Marine, Civil Action No. 01-1420, 2009 WL 1939825, at *4 (W.D. La. July 6, 2009), aff'd sub nom. on other grounds, In re Complaint of Taira Lynn Marine Ltd. No. 5 LLC, 420 F. App'x 330 (5th Cir. 2011), is unpersuasive on this issue for a number of reasons. There is no indication that the policy at issue there was governed by New York law, as is the case here. There is no discussion of the manner in which WQIS denied coverage. And there is no exploration of the differences between disclaimer and repudiation elucidated in Seward Park and followed in this district. See Squillante v. Cigna Corp., No. 12 Civ. 6003, 2012 WL 5974074, at *3 (S.D.N.Y. Nov. 28, 2012) (citing Seward Park, 43 A.D.3d at 32, 836 N.Y.S.2d at 105); PB Americas, 690 F. Supp. 2d at 250 (same); National Railroad, 2009 WL 562610, at *13 (same). Similarly, TLC Beatrice International Holdings, in which the court provisionally accepted the proposition that an insured need not receive the insurer's consent to settle a claim for which the insurer has disclaimed coverage, pre-dates

Seward Park and (unsurprisingly) fails to address the effects of disclaimer versus repudiation on such provisions.  2000 WL 282967, at *4 n.5.

For these reasons, ACL's obligation to seek WQIS' consent prior to incurring defense and investigation costs was not waived, and this is not a basis on which to grant the plaintiffs' motion for summary judgment on WQIS' prior consent defense as to Phase II costs.

b.    Implied Prior Consent in Phase II

In further support of their motion for summary judgment on the prior consent defense, the plaintiffs argue that ACL had WQIS' implied consent (1) to retain CTEH in Phase II, mirroring the argument in connection with this entity's Phase I charges and (2) to retain Martin Ottaway and Budwine, because WQIS has already reimbursed ACL for certain services from these entities in Phase I. (Pl. Memo. at 8).  In addition, in their opposition to WQIS' motion for summary judgment, the plaintiffs argue that ACL had WQIS' implied consent to hire Bergin, BMT, Docusource, GAEA, Mr. Randall, and Dr. George.   (Pl. Reply at 27).   They contend that these consultants were hired by the law firm Jones Walker, a firm ACL had obtained consent to hire, and that, therefore, WQIS' consent to hire these other entities and individuals should be implied.  (Pl. Reply at 27-28).

The implied consent argument fails for the reasons discussed above -- the policy does not countenance implied consent, but requires express consent.   To the extent that the plaintiffs

20

believe that WQIS waived its right to disclaim coverage for the charges of Martin Ottaway and Budwine by reimbursing for certain costs incurred by these firms, the belief is mistaken, because WQIS made these payments without prejudice to all of its rights and defenses. (Pl. R. 56.1 Response at 20-21, ¶¶ 25-27). Therefore, the previous payments do not prevent WQIS from asserting the lack of prior consent defense as to these charges. Estee Lauder, 62 A.D.3d at 35, 873 N.Y.S.2d at 594 (insurer may reserve rights to disclaim on any basis later found to be applicable).

For these reasons, I recommend that the plaintiffs' motion for summary judgment as to WQIS' prior consent defense in connection with charges incurred in Phase II be denied, and defendant's motion be granted as to its prior consent defense for Phase II charges from CTEH, the Nicoletti Firm, Martin Ottaway, Budwine, Intertek, Kim & Wright, Magnan, Hogan Lovells, Fox Rothschild, Holbrook & Murphy, George Randall, Bergin, GAEA, BMT, William George, Ph.D., and Docusource.

C. "Damages" Defense

The argument here turns on what the word "damages" means as used in WQIS' Fourth Affirmative Defense. (Pl. Memo. at 8; Def. Memo. at 17). That affirmative defense states, "The damages alleged in the Amended Complaint were insured by parties other than WQIS, and therefore, WQIS is not liable to ACL." (Answer at 9).

As noted above, Judge Kaplan has held that WQIS must reimburse ACL for all costs incurred in the investigation and defense of the claims insured under Coverage A -- that is, that

WQIS is the insurer of all such defense and investigation costs. American Commercial Lines, 2010 WL 1379763, at *3. The plaintiffs contend that, because they seek only defense and investigation costs in this action, the issue at the heart of the Fourth Affirmative Defense has already been decided. (Pl. Memo. at 8). WQIS counters that the amended complaint seeks reimbursement not only for defense costs, but also for costs that WQIS contends are response costs. It therefore used the word "damages" purposely to protect WQIS against claims for response costs, which are no longer recoverable from WQIS because the policy limit for Coverage A has been reached. (Def. Memo. at 18).

WQIS needn't worry. The amended complaint clearly seeks only defense and investigation costs. (Am. Compl., ¶¶ 48, 52, 61 & Prayer for Relief). The Court has reserved the question of which claimed expenses fit that description for determination by a special master. (Stipulation and Order dated Oct. 15, 2013). Costs that are found to be response costs cannot be charged to WQIS for two reasons: (1) they are no longer covered by the policy, a fact that both the parties and the Court have recognized, see American Commercial Lines, 2010 WL 1379763, at *2 & n.15, and (2) the amended complaint limits its requested relief to defense and investigation costs. Therefore, I recommend that the plaintiffs' motion for summary judgment be granted on the Fourth Affirmative Defense.

D.   Financial Interest Defense

The plaintiffs ask for summary judgment on WQIS' Seventh

Affirmative Defense. ACL itself did not pay any of the costs for which it seeks reimbursement; rather, all were covered by the excess insurers. (Pl. R. 56.1 Statement, ¶¶ 31-33). WQIS argues that, therefore, ACL has no financial interest in this case, has suffered no recoverable damages, and should be dismissed from the action. (Def. Memo. at 18-19). Although WQIS does not mention standing doctrine, I interpret this as an argument that ACL does not satisfy Article III's case or controversy requirement because it has not suffered an "injury in fact." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (footnote omitted) (citations omitted) (internal quotation marks omitted). Here, ACL had a contract under which WQIS insured certain costs, including certain defense and investigation expenses. ACL alleges that WQIS wrongfully refused to pay those incurred costs, breaching the contract. Thus, the plaintiffs have alleged that ACL's legally protected contractual interest was actually and concretely invaded.

LM Insurance Corp. v. Fed Equities, Inc., No. 05 C 1154, 2008 WL 4378366 (N.D. Ill. March 28, 2008), is instructive. In that case, an insurer sued its insurance brokers, alleging that the brokers issued a certificate of insurance to an entity and received premium payments that were not remitted to the insurer. Id. at *1. The defendant brokers argued that there was no injury in fact because the insurer was reinsured and would have all losses

23

reimbursed. Id. at *15. The court called that argument "specious," stating that the plaintiff's legally protected contractual interest "was invaded when [the broker] allegedly failed to pay [the insurer] the premiums due. That is sufficient to establish standing." Id.

Indeed, WQIS' argument has already been rejected by a different court, albeit without discussion of standing doctrine. In In re Marine, WQIS asserted that it owed nothing to the insured because the insured's excess insurers had paid the claims. 2009 WL 1939825, at *4. The court found that "to any extent the WQIS policy should have been liable rather than the [excess] policies, reimbursement would be owed because the costs paid were those incurred by [the insured] for its defense and owed by WQIS." Id.; cf. Bohemia, Inc. v. Home Insurance Co., 725 F.2d 506, 515 (9th Cir. 1984) (rejecting contention that insured suffered no damage because it was indemnified by excess insurer).

I therefore recommend granting the plaintiffs' motion for summary judgment on the Seventh Affirmative Defense.

Conclusion

For the foregoing reasons, I recommend that the parties' cross-motions for summary judgment be resolved as follows:

1. The plaintiffs' motion for summary judgment on the defendant's First Affirmative Defense, Second Affirmative Defense, Third Affirmative Defense, Fourth Affirmative Defense, and Seventh Affirmative Defense should be granted;

2. The plaintiffs' motion for summary judgment on the defendants' Sixth Affirmative Defense should be granted as to Phase I costs incurred from Maritime Alliance Group, Inc. and Cardno Entrix;

3.    The plaintiffs' motion for summary judgment on the
      defendant's Sixth Affirmative Defense should be
      granted as to Phase II costs incurred from Maritime
      Alliance Group, Inc., Cardno Entrix, Worley
      Catastrophe Response LLC, and Jones Walker;

4.    The plaintiffs' motion for summary judgment as to
      the defendant's Sixth Affirmative Defense should be
      denied in all other respects; and

5.    The defendant's motion for summary judgment should
      be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          January 16, 2014

Copies mailed this date:

John A.V. Nicoletti, Esq.
Nooshin Namazi, Esq.
Richard W. Stone, II, Esq.
William M. Fennell, Esq.
Nicoletti Hornig & Sweeney
88 Pine St., 7th Floor
New York, NY 10005

John M. Woods, Esq.
Corey R. Greenwald, Esq.
John R. Stevenson, Esq.
Mary H. Mulhearn, Esq.
Clyde & Co. US LLP
405 Lexington Ave.
New York, NY 10174